ACCEPTED
15-25-00182-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/6/2026 9:19 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00182-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/6/2026 9:19:39 AM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals for the
Fifteenth District of Texas
Austin, Texas

**Texas Health and Human Services Commission et al,**

*Appellant,*

**v.**

**Kenneth Collier and Taneshu Collier et al.**

*Appellee.*

On Appeal from the 345th Judicial District Court, Austin, Texas

**Brief of Appellee**

John Ferguson
Texas State Bar No. 24066597
john@fergusonlawpractice.com
Kyle Ann Ferguson
Texas State Bar No. 24065223
kyle@fergusonlawpractice. com
Ferguson Law Practice PLLC
1017 RR 620 S, Ste 222
Austin TX 78734
Tel: (512) 996-5407
Fax: (737) 208-1931
*Counsel for Appellee*

**ORAL ARGUMENT REQUESTED**

## Identity of Parties and Counsel

**Appellant:  Texas Health and Human Services Commission et al**

*Counsel for Appellant:*

Kelsey Hanson
Texas Bar No. 24096654
Assistant Attorney General
PO Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (737) 224-1244
Fax: (512) 320-0667
Kelsey.hanson@oag.texas.govc


**Appellee:   Kenneth Collier and Taneshu Collier et al**

*Counsel for Appellee:*

John Ferguson
Texas State Bar No. 24066597
john@fergusonlawpractice.com
Kyle Ann Ferguson
Texas State Bar No. 24065223
kyle@fergusonlawpractice. com
Ferguson Law Practice PLLC
1017 RR 620 S, Ste 222
Austin TX 78734
Tel: (512) 996-5407
Fax: (737) 208-1931
*Counsel for Appellee*

*Trial Court:*

Hon. Don Burgess
Judge Presiding
345th Judicial District Court
Travis County, Texas

# Table of Contents

Title Page (Oral Argument Requested) …………………………………………….i

Identity of Parties and Counsel ……………………………………………………ii

Table of Contents ………………………………………………………………..iii

Index of Authorities …………………………………………………………iv

Statement of the Case ……………………………………………...…………1

Record References ………………………………………………...……….2

Statement of Facts …………………………………………………………………2

Appellees Claims Against Appellants …………………………………………8

Summary of Argument ……………………………………………………..10

Argument and Authorities …………………………………………...………13

       Argument Re Plea to Jurisdiction …………………………………..15

       Argument Re Temporary Injunction ………………………………….30

Conclusion and Prayer …………………………………………………..32

Certifications ………………………………………………………33

# Index of Authorities

**Page(s)**

**Cases**

Cameron County Appraisal District v. Rourk, 2016 WL 380309 (Tex. App. – Copus Christi) (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 19

City of Austin v. Miller, 714 SW3d 920 (Tex. App. – Austin) (2025) . . . . . . . . . . . 14

City of El Paso v. Heinrich, 284 S.W.3d 366, 370 and 372 (Tex. 2009) . . . . . . . . . . . 28

Collier v. Suhre, (Tex.App.-Hous. (1 Dist.) 2020) 605 S.W.3d 699 . . . . . . . . 9, 12, 18, 28

*County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) . . . . . . . . . . . . . 13

Hous. Belt & Terminal Ry. Co. v. City of Houston, 487 S.W.3d 154, 160 (Tex. 2016) . . . . 28

In re Marriage of Beach, 97 S.W.3d 706, 708 (Tex.App.-Dallas 2003, no pet.) . . . . . . 15

Loye v. Travelhost, Inc., 156 S.W.3d 615, 619 (Tex.App.-Dallas 2004) . . . . . . . . . . . 15

M.D. v. Abbott, 2:11-cv-00084, 509 F. Supp. 3d 683 (S.D. Tex.) (2020) . . . 4, 17

Patel v. Texas Department of Licensing and Regulation, 469 SW3d 69 (Tex. 2014) . . . . 27, 29

Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 551–52 (Tex.App.-Dallas 1993) . . 15

Strickland v. Medtronic, Inc., 97 S.W.3d 835, 837 (Tex.App.-Dallas 2003) . . . . . . . . . 15

Stukenberg v. Abbott, 509 F.Supp. 3d 683 (US Dist. Ct.) . . . . . . . . . . . . . . . 3, 17

Texas Department of Insurance v. Texas Association of Health Plans (Tex.App.-Austin 2020) 598 S.W.3d 417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 18

*Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)) . . 13

Texas Education Agency v. Houston Independent School District, 609 SW3d 569 (Tex. App. – Austin) (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Texas Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024) . . . . . . . . . . . 14

Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 883 (Tex.App.-Dallas 2003) . . . 15

**Laws and Rules**

26 Tex. Admin. Code § 745.497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-30

42.048 Texas Human Resources Code…………………………………… 2-30

42.050 Texas Human Resources Code…………………………………… 22

42.051 Texas Human Resources Code…………………………………… 21

Chapter 37 Tex. Civ. Prac. Rem. Code .. . . . . . . . . . . . . . . . . . . . . . . . 9-30

Childcare Regulation Handbook . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 6, 23

Tex. Govt. Code 2001.038 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-30

Tex. R. App. Proc. 29.3 . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . 31-32

## Statement of the Case

*Nature of the Case:* Appellants have unlawfully placed the condition of heightened monitoring on two of Appellees' residential treatment facilities, so Appellees sued Appellants for Declaratory Relief Under Tx. Govt. Code § 2001.038, for declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code, and for a temporary and permanent injunction against Appellants continuing to unlawfully carry out heightened monitoring procedures against Appellees expressly leaving open the possibility that future circumstances may require a lawful placement of heightened monitoring on Appellees' facilities.

*Trial Court:* Hon. Don Burgess, Honorable Judge Presiding, 345th Judicial District, Travis County, Texas.

*Trial Court Proceedings:* The Court denied Appellants' plea to the jurisdiction finding that Appellants had sufficiently stated grounds for jurisdiction against Appellants and the Court granted a temporary injunction in favor of Appellees enjoining Appellants' enforcement of heightened monitoring procedures against Appellees.

## Statement Regarding Oral Argument

Appellee believes that oral argument would assist the Court in its review of the legal arguments and evidence, and requests argument. *See* TEX. R. App. P. 39.

## Issues Presented

1.     Did the trial court err in determining Appellees did indeed state causes of action conferring jurisdiction on the trial court?

2.     Did the trial court err in determining that Appellees are entitled to injunctive relief?

1

**Record References**

In this brief, the Clerk's Record is cited as "CR" and the Reporter's Record is cited as "RR".

**Statement of Facts**

**A.    Appellee's operations and enforcement timeline[1].**

Kenneth and Taneshu Collier created TRELS Home for Children on August 21, 2018, and TRELS Home LLC on February 19, 2021, for the purposes of providing foster care and residential treatment center services for children in state custody ("TRELS"). HHSC issued initial licenses to TRELS Home LLC on April 18, 2024, and to TRELS Home for Children on October 3, 2024, without designating a condition of heightened monitoring on the licenses.

Thereafter, on March 28, 2025, HHSC retroactively designated a condition of heightened monitoring on the license of TRELS Home LCC, and on April 2, 2025, HHSC retroactively designated a condition of heightened monitoring on the license of TRELS Home for Children citing their authority to do so as 42.048 of the Texas Human Resources Code ("operative statute") and 26 Texas Administrative Code §745.497(c)(1) ("TAC provision"). Both the operative statute and the TAC provision allow placement of a heightened monitoring condition only at the issuance of an initial license.

---

[1] The following facts and arguments are all contained at CR 3-16.

The operative statute and the TAC provision concern solely the issuance of an initial license. Appellees' initial licenses had already been issued almost a year or six months prior to the retroactive designation of heightened monitoring, respectively.

After the issuance both TRELS operations were already established and operating. To impose heightened monitoring on an already established operation requires an intense showing. Pursuant to a March 18, 2020, federal court order issuing from the litigation known as the *Stukenberg* cases[2], a designation of heightened monitoring against an established operation requires "a high rate of contract and standards violations for at least three of the last five years" (*see*, Stukenberg v. Abbott, 509 F.Supp. 3d 683 at 794 (US Dist. Ct. – Copus Christi) (2020)). Thus, it is impossible to issue a designation of "heightened monitoring" against an established entity operating less than three years. But, more importantly, there is a marked distinction between *issuing a license with a heightened monitoring condition* versus *placing an already operating facility* on heightened monitoring. HHSC's retroactive application of the applicable statute and TAC provision is unlawful and is an egregious attempt to abridge the very exacting and

---

[2] In short, a group of children through their guardians sued the State of Texas for failing to protect them from abuse while in the custody of the foster care system in Texas. The litigation resulted in the appointment of a board to identify problem areas and restitutions to same. The formal concept of "heightened monitoring" was born from this litigation and these board resolutions. As such, the term "heightened monitoring" and how the need for same is established is defined in this line of cases and the resolutions of the board established thereby.

rigorous showing required to place an already operating facility on heightened monitoring. After issuing the licenses to TRELS, HHSC and DFPS must now only evaluate TRELS for a pattern of violations that meet the criteria for heightened monitoring as set forth in the federal court order for M.D. v Abbott litigation. *See* M.D. v. Abbott, 2:11-cv-00084, (S.D. Tex.). TRELS' aforementioned operations do not have a pattern of violations triggering such an evaluation and therefore cannot be placed on heightened monitoring.

Appellees contacted HHSC by letter demanding the heightened monitoring conditions be removed from TRELS licenses as HHSC had no authority to impose such a condition after the initial licenses were issued. HHSC refused to remove the condition and has instead subjected TRELS to dogged and harassing scrutiny without any justification whatsoever other than the unlawful retroactive designation of "heightened monitoring."

In fact, since March of 2025, HHSC and DFPS heightened monitoring staff conducted 19 inspection visits to TRELS. Each visit requires the inspector to review staff and child files to inspect for compliance with standards listed in the heightened monitoring plan, evaluate TRELS for compliance with background check rules, review serious incident reports, conduct a walk-through inspection of the operation, as well as interview a minimum of one staff member, and if necessary, children in care. To date, 5 children in care have been interviewed as

4

part of the inspection visits. These TRELS operations have a combined full capacity of 25 children resulting in over 20 percent of its population already being interviewed by the agencies.

In addition to increased interviews, visits and oversight, TRELS must have all child placements approved by the Associate Commissioner or Regional Director for Children's Protective Services (CPS). The weekly unannounced inspection visits will continue until TRELS is released from its heightened monitoring plans which began April 15, 2025, and will remain in effect for at least one year until DFPS and HHSC release TRELS from the heightened monitoring plan based on completion of all the following requirements:

a) TRELS has satisfied the conditions of its heightened monitoring plan;

b) TRELS is in compliance with the standards and contract requirements that led to heightened monitoring (as demonstrated by at least six months' successive unannounced visits); and

c) TRELS is not out of compliance on any medium-high or high-weighted licensing standards.

HHSC and DFPS tasked TRELS with several conditions outlined in the heightened monitoring plans. TRELS Home for Children has 17 plan tasks while TRELS Home LLC has 19 plan tasks. Each task contains several components including but not limited to requiring Appellees to create training material and re-

5

train staff, conduct their own weekly unannounced onsite visits after hours, and develop or enhance current policy/procedures. In addition, Appellees are required to participate in a monthly meeting held by DFPS and HHSC heightened monitoring staff to discuss the status and compliance with plan tasks.

These unlawful audits, with their stunning frequency and unusual breadth, raise to a level of harassment and consistently injure Appellees financially by straining their resources and by massively interfering with their otherwise lawful right to operate their facilities. In the absence of a heightened monitoring designation HHSC's typical monitoring and/or audit procedure and frequency are drastically minimized. The frequency of regulating a licensed facility within the first 12 months after the issuance of a full license requires HHSC to conduct at least one unannounced monitoring inspection every six months and evaluate for compliance with all minimum standards within 12 months (Child Care Handbook 4131). Typically, that means an HHSC inspector would conduct two unannounced visits during a one-year period. After the first 12 months following the issuance of a full license, the inspector conducts an unannounced monitoring section at least annually (Human Resource Code 42.044(b)). Further, at least once every two years, HHSC must conduct an inspection after 7 p.m. on a weekday or anytime on the weekend. Appellees understand and have no issue with standard monitoring and audits, instead Appellees complain of the intense, unauthorized and unjustified

6

burden of subjection to heightened monitoring procedures where such a designation has been unlawfully placed by HHSC on TRELS.

***Post Trial Court Ruling Conduct***. Additionally[3], as the Court is aware, even after Appellees were granted relief by the trial court from the above actions, Appellants filed a quick notice of appeal then immediately, on November 7, 2025, at 5:30 pm (approx.), the State called upon droves of investigators to simultaneously attack both of Appellees' facilities (which are in completely different cities) on a Friday night at 5:30 pm. Both teams of investigators stated to Appellees' employees (and one of them "Mark Stehly" actually told undersigned counsel over the phone) that they were instructed by "management" to simultaneously descend upon Appellees facilities immediately because "the order had been lifted". Undersigned counsel asked Robert Behles what other acute emergency required a simultaneous and surprise descension on Appellees' facilities at 5:30 pm on a Friday night and there was no other explanation given. So, the State, with no justification other than raw revenge, coordinated a joint attack on Appellees facilities nearly immediately upon filing the notice of appeal. The surprise and unwarranted inspections disrupted the children in care and the staff. The children were preparing for dinner and bed when the State made their

---

[3] These facts in this paragraph are not part of the Appellate record and could not be as the events occurred after Appellants filed their appeal but these events and the accompanying affidavits were part of a motion for relief filed with this Honorable Court under this cause number.

7

surprise entry and it disrupted the children and they found it distressing and confusing. The subject operations were unlawfully placed on heightened monitoring (and due only to common ownership and not due to any previous misconduct or standards violations). The October 15, 2025, oral trial court ruling granting the temporary injunction had been in place for a mere two weeks at the time the State performed the emergency and baseless invasion. In fact, on October 29, 2025, HHSC conducted its normal announced annual licensing inspection at the Hondo facility, so the State had inspected the Hondo facility within the last eight days before the November 7, 2025, concerted invasion. There was no other emergency need (or any need at all) to visit these facilities other than for revenge. Then, unbelievably, on November 13, 2025, the State showed up again. This time the State said they had to video record everyone. The State had never done that before and it was merely to harass Appellees. There is no other justification for this behavior beyond harassment. The very second the State filed its notice of appeal it sought revenge and it harassed Appellees for no reason at all.

## B. APPELLEES' CLAIMS AGAINST APPELLANTS

Based on the foregoing facts (in "A. Appellee's operations and enforcement timeline") Appellees have filed suit alleging the following causes of action based on the reasoning stated below and also found at CR 8-9 and CR 40-47:

8

**Declaratory Relief Under Tx. Govt. Code § 2001.038**. Section 2001.038 of the Government Code creates a cause of action for declaratory judgment regarding the validity or applicability of a rule and is a grant of original jurisdiction and, moreover, waives sovereign immunity, as to a suit brought by a plaintiff alleging that a rule interferes with or impairs its legal right or privilege. Texas Department of Insurance v. Texas Association of Health Plans (Tex.App.-Austin 2020) 598 S.W.3d 417. Appellees restate all the facts in "A. Appellee's operations and enforcement timeline" herein as if replicated verbatim here. Based on these facts Appellees allege that the unlawful, retroactive application of the TAC provision interferes with its legal rights to run its operations.

**Uniform Declaratory Judgment Act as to Individual Appellants in their Official Capacities.** Chapter 37 of the Texas Civil Practice and Remedies Code applies against individual state agents in their official capacities when the actions they take are "ultra vires". Claims brought under the Uniform Declaratory Judgment Act (UDJA) for declaratory or injunctive relief against actions taken by a governmental official beyond her discretion or without legal authority, known as ultra vires actions, do not implicate governmental immunity. Collier v. Suhre, (Tex.App.-Hous. (1 Dist.) 2020) 605 S.W.3d 699. Appellees restate all the facts in section "A. Appellee's operations and enforcement timeline" herein as if replicated verbatim here. Based on these facts Appellees allege that Cecile Erwin Young and

Laura Castillo have acted ultra vires by applying the operative statute and TAC provision in a manner not allowed by their express language. The operative statute and the TAC provision apply only to issuance of a license and not to ongoing operations after said issuance. As such Appellant's use of the operative statute and TAC provision against an ongoing operation is unlawful and ultra vires. Appellees seek declaratory relief declaring that these individual actors are taking unlawful and unauthorized actions not supported by the operative statute or even by their own TAC provision. Appellees also seek attorney's fees.[4]

## Summary of the Argument

- *Regarding Appellants' Plea to the Jurisdiction.*

Appellees' basis for jurisdiction in its petition is obvious and plain. Appellants placed a designation of "heightened monitoring" on Appellees' childcare facilities **after** Appellants had already issued Appellees' licenses without any conditions. When questioned about their authority to do that, Appellants cited a statute and a TAC provision that concern "issuance[5]" of a license. Appellees' licenses had already been issued without any conditions, but Appellants retroactively placed (and are in fact currently burdening Appellees' licensures with) a condition of heightened monitoring on Appellees' already issued licenses. It is beyond clear

---

[4] *See, for example*, <u>Cameron County Appraisal District v. Rourk</u>, 2016 WL 380309 (Tex. App. – Copus Christi) (2016).

[5] Black's Law Dictionary defines "issuance" as "the instance of putting, sending, or giving something out"; Cambridge Dictionary defines issuance as "the act of supplying an official document"; Meriam Webster defines issue as "the act of publishing or giving out"

that the statute and TAC provision Appellants cite as their authority for their unlawful actions concern only the "issuance" of a license. As such Appellees filed this lawsuit for declaratory relief. Appellees carefully, accurately, and effectively cited proper and controlling case law in its petition knowing Appellants would file a reflexive, knee-jerk plea to the jurisdiction. Instead of simply remediating its unlawful actions by removing the retroactive designation of the heightened monitoring conditions, the Appellants instead attempt to hide behind an inapplicable shroud of "immunity" and ask this Court to save them from their unlawful actions (in fact they are asking the Court to aid them in continuing their unlawful activity) so they can simply "close their file." Appellants' plea to the jurisdiction mindlessly recites, again and again, general and thoughtless precepts of governmental immunity devoid of any case specific analysis.

All the while Appellees are suffering from the effects of Appellants' unlawful behavior (as recounted and specifically described in Appellees' petition at CR 5-8). Appellees have recognized remedies, and both are exceptions to or waivers of immunity.

- As plainly cited in its petition, Appellees sue under Texas Government Code 2001.038 and that statute **is a waiver of sovereign immunity** when the validity or application of a regulation impairs a legal right or privilege of Appellee. *See*, <u>Texas Department of</u>

Insurance v. Texas Association of Health Plans (Tex.App.-Austin 2020) 598 S.W.3d 417 (stating "Provision of Administrative Procedure Act (APA), which creates cause of action for declaratory judgment regarding validity or applicability of rule is a grant of original jurisdiction **and, moreover, waives sovereign immunity**, as to a suit brought by a plaintiff alleging that a rule interferes with or impairs its legal right or privilege").

- Additionally, Appellees sue under the Declaratory Judgment Act alleging that the named officials are acting without lawful authority and in an ultra vires fashion. Appellees cite a completely on point and eerily similar case. Collier v. Suhre, (Tex.App.-Hous. (1 Dist.) 2020) 605 S.W.3d 699. The *Collier* case states that that the Declaratory Judgment Act waives immunity when the Appellee complains of government official actions taken beyond their discretion or without legal authority. Appellees plainly state that the cited statute and TAC provision Appellants allege as their authority to retroactively place a "heightened monitoring" condition on Appellees' licenses applies only to license issuance and so cannot possibly form the lawful basis for such an action after issuance. As such, these government officials are acting outside their lawful authority which is otherwise known as

12

"ultra vires" action.

Appellees' citations are on the face of its petition, and their reasoning and applicability are plain. Appellees' basis for jurisdiction is so plain that Appellees believe the Appellants' plea to the jurisdiction is frivolous. The test for jurisdiction is based on the face of the pleadings and Appellees' pleadings plainly state two causes of action that waive sovereign immunity and while this is not relevant to a plea to the jurisdiction Appellees do in fact provide a clear and convincing factual basis and argument as to why they will ultimately prevail.

## Argument and Authorities

### I.      Standard of Review.

- *Regarding Appellants' Plea to the Jurisdiction.*

In reviewing a plea to the jurisdiction courts construe the pleadings liberally in the plaintiff's (here Appellee) favor, do not weigh the merits of claims, indulge every reasonable inference, and resolve any doubts in favor of jurisdiction. *See*, <u>Texas Dep't of Parks & Wildlife v. Miranda</u>, 133 S.W.3d 217, 225–26 (Tex. 2004)); *see also*, <u>County of Cameron v. Brown</u>, 80 S.W.3d 549, 555 (Tex. 2002). Conversely, "[t]he party asserting the plea must establish an incurable jurisdictional defect apparent from the face of the pleadings that makes it impossible for the plaintiff's petition to confer jurisdiction on the trial court." <u>Miranda</u>, 133 S.W.3d at 228. If a plaintiff fails to plead facts sufficient to establish jurisdiction, but the petition does not affirmatively demonstrate incurable

13

defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27; *Texas Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). Note that the test for jurisdiction is based solely on the facts in the pleadings and not on the ultimate success of the claims[6] (City of Austin v. Miller, 714 SW3d 920 (Tex. App. – Austin) (2025) *at* 925).

- *Regarding the Temporary Injunction*

The decision to grant or deny an application for a temporary injunction is within the sound discretion of the trial court. *See*, e.g., Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.2002); Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex.1993) (per curiam); Wilson N. Jones Mem'l Hosp. v. Huff,188 S.W.3d 215, 218 (Tex.App.-Dallas, 2003, pet. denied) (published, but not yet reported in S.W.3d). An appellate court will not reverse a trial court's decision to deny an application for a temporary injunction absent an abuse of discretion. *See, e.g., Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. An appellate court will not substitute its judgment for that of the trial court. *See e.g.*, *Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. Also, an appellate court draws all legitimate inferences

---

[6] Appellees believe their claims have intense merit but at this stage of the litigation with Appellants filing a plea to the jurisdiction Appellees do not have a merit-based burden but instead only a pleading, fact-based burden.

from the evidence in the light most favorable to the trial court's order granting or denying the application for a temporary injunction. *See, e.g.*, Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 883 (Tex.App.-Dallas 2003, no pet.); In re Marriage of Beach, 97 S.W.3d 706, 708 (Tex.App.-Dallas 2003, no pet.); *see also* Loye v. Travelhost, Inc., 156 S.W.3d 615, 619 (Tex.App.-Dallas 2004, no pet.) (op. on reh'g); Strickland v. Medtronic, Inc., 97 S.W.3d 835, 837 (Tex.App.-Dallas 2003, pet. dism'd w.o.j.); Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 551–52 (Tex.App.-Dallas 1993, no writ).

- *Argument Regarding Plea to Jurisdiction*

*FACTUAL BASIS FOR JURISDICTION*: **HHSC issued licenses to TRELS Home LLC on April 18, 2024, and to TRELS Home for Children on October 3, 2024, without designating a condition of heightened monitoring on the licenses**. Thereafter, HHSC retroactively designated a condition of heightened monitoring *on the already issued licenses* of TRELS Home LLC, on March 28, 2025, and on TRELS Home for Children on April 2, 2025[7]. **Appellants cited** their authority to do so as 42.048 of the Texas Human Resources Code ("operative statute") and 26 Texas Administrative Code §745.497(c)(1) ("TAC provision").

---

[7] Reporters Record, Volume 3, Pages 16-39, which are Exhibit P-007 through P-010, show the actual licensing documents and the summary of a timeline which was admitted to evidence without objection and all of which shows Appellants issued the initial licenses without any conditions at all.

15

Both the operative statute and the TAC provision concern solely the "issuance" of a license. The operative statute (42.048(b)) says "***when issuing a license***, the commission may impose restrictions[8]". The cited TAC provision concerns solely the "issuance" of a license as well; every applicable subpart of the TAC provision cited says "***when issuing***". TRELS operations' licenses had already been issued without any conditions of heightened monitoring, and they had been operating for almost a year for one of them and for six months for the other prior to the retroactive designation of heightened monitoring.

When Appellants placed a heightened monitoring designation on Appellees' operations the operations were already licensed, established, and operating. To impose heightened monitoring on an already licensed and established operation requires an intense showing. Pursuant to a March 18, 2020, federal court order issuing from the litigation known as the *Stukenberg* cases[9], a designation of heightened monitoring against an established operation requires "a high rate of contract and standards violations for at least three of the last five years" (*see,*

---

[8] Please note that, as a secondary concern not germane to this plea to the jurisdiction, "restrictions" is a term Appellees intend to vet throughout the discovery process as it is not clear at all that even at issuance a designation of heightened monitoring is a simple "restriction" or something more than a "restriction" because of its severity and burden on the operation.

[9] In short, a group of children through their guardians sued the State of Texas for failing to protect them from abuse while in the custody of the foster care system in Texas. The litigation resulted in the appointment of a board to identify problem areas and restitutions to same. The formal concept of "heightened monitoring" was born from this litigation and these board resolutions. As such, the term "heightened monitoring" and how the need for same is established is defined in this line of cases and the resolutions of the board established thereby.

Stukenberg v. Abbott, 509 F.Supp. 3d 683 at 794 (US Dist. Ct. – Copus Christi) (2020)). Thus, it is impossible to issue a designation of heightened monitoring against an established entity operating less than three years. But, more importantly, there is a marked distinction between *issuing a license with a heightened monitoring condition* versus *placing an already operating childcare facility* on heightened monitoring. Appellant's retroactive application of the applicable statute and TAC provision is unlawful and is an egregious attempt to abridge the very exacting and rigorous showing required to place ***an already operating childcare facility*** on heightened monitoring. After issuing the licenses to Appellees, Appellants must establish a pattern of violations that meet the criteria for heightened monitoring as set forth in the federal court order for **M.D. v Abbott** litigation. *See* M.D. v. Abbott, 2:11-cv-00084, (S.D. Tex.). Appellees' subject operations do not have such a pattern of violations Iin fact there is no evidence at all of violations cited by Appellants) and therefore they cannot be placed on heightened monitoring.

*LEGAL BASIS FOR JURISDICTION*: Appellees reference and replicate all factual basis cited directly above as if recited verbatim here. Based on the foregoing facts and arguments Appellees have alleged the following claims, both of which give Appellee jurisdiction and both of which are recognized waivers of sovereign immunity.

**Declaratory Relief Under Tx. Govt. Code § 2001.038**. Section 2001.038 of the Government Code creates a cause of action for declaratory judgment regarding the validity or applicability of a rule and is a grant of original jurisdiction and, moreover, waives sovereign immunity, as to a suit brought by a Appellee alleging that a rule interferes with or impairs its legal right or privilege. Texas Department of Insurance v. Texas Association of Health Plans (Tex.App.-Austin 2020) 598 S.W.3d 417. Appellees restate all the facts in paragraphs 11 through 15 herein as if replicated verbatim here. Based on these facts Appellees allege that the applicability of the TAC provision to this circumstance interferes with its legal rights to run TRELS Home LLC and TRELS Home for Children.

**Uniform Declaratory Judgment Act as to Individual Appellants in their Official Capacities.** Chapter 37 of the Texas Civil Practice and Remedies Code applies against individual state agents in their official capacities when the actions they take are "ultra vires". Claims brought under the Uniform Declaratory Judgment Act (UDJA) for declaratory or injunctive relief against actions taken by a governmental official beyond his discretion or without legal authority, known as ultra vires actions, do not implicate governmental immunity. Collier v. Suhre, (Tex.App.-Hous. (1 Dist.) 2020) 605 S.W.3d 699. Appellees restate all the facts in paragraphs 11 through 15 herein as if replicated verbatim here. Based on these facts Appellees allege that Cecile Erwin Young and Laura Castillo have acted ultra

18

vires by applying the operative statute and TAC provision in a manner not allowed by their express language. The operative statute and the TAC provision apply only to issuance of a license and not to ongoing operations after said issuance. As such Appellants' use of the operative statute and TAC provision against an ongoing operation is unlawful and ultra vires. Appellees seek declaratory relief declaring that these individual actors are taking unlawful and unauthorized actions not supported by the operative statute or even by their own TAC provision. Appellees also seek attorney's fees.[10]

Based on all the foregoing it is completely obvious from the face of Appellees' pleadings that they have alleged sufficient facts and law to confer jurisdiction over Appellants. Appellants retroactively and after issuing Appellees' licenses placed a designation of heightened monitoring on Appellees' already operating and licensed childcare facilities. **They cannot do that.** When asked what their authority was for such an egregious and unlawful act Appellants cited two provisions that have to do with **issuing** licenses. But, as stated ad nauseum in this pleading and in their Petition, Appellees' licenses had already been issued. As such, Appellants' alleged legal basis for their action is plainly inapplicable. As such Appellees sue Appellants because Appellants application of the cited regulations is without any legal basis (and are in fact hostile, careless, and

---

[10] *See, for example*, <u>Cameron County Appraisal District v. Rourk</u>, 2016 WL 380309 (Tex. App. – Copus Christi) (2016).

unconstitutional). Appellees' remedies under the Texas Government Code and the Declaratory Judgment Act are express waivers of sovereign immunity and the valid, applicable case citations standing for this very proposition are plainly laid out in Appellees' petition. There is no realistic or serious question about jurisdiction here.

Give that appellate review and review in general for jurisdictional purposes concerns the face of the pleadings and is not a weighing of the merits of the arguments or acts of the Appellee, no additional content or argument is needed to defeat Appellant's appeal. But, out of an abundance of caution, Appellee does note that Appellant is indeed arguing about the merits of the claims and while that is premature and improper when assessing jurisdiction Appellee does want to address those arguments in at least a summary fashion. This summary review of Appellant's merits-based arguments is not new and the basis for same has been in almost every pleading filed by Appellee and all of this is based on the content of the appellate record. With that preface, it appears Appellant is making three distinct (yet false and unsupported) arguments about why the plea to the jurisdiction should have been granted and those three arguments are:

i)      Appellant says that "issuance" of a license is some kind of ongoing process that lasts for some unprescribed duration of time during which Appellants can take any action they want (including unlawfully

20

placing conditions liked "heightened monitoring" on an. Already issues license);

ii)     Appellant says that Appellant's actions are justified due to "linkage"; and,

iii)    Appellant says that Appellee's claim of damages is conclusory and that as a subset of this same argument that Appellee admits Appellant cannot be held liable for "damages".

Appellee will address each of these in turn below but without waiving what it has already previously stated in the Clerk's Record (ex. CR 61-63) that the plea to the jurisdiction has nothing to do with the ultimate merits of the claims but merely that the pleadings state a cause of action conferring jurisdiction on the trial court to decide the matters plead.

i)      Regarding (i) above, there is **no statutory support** at all for Appellant's claim that there is some period of time where a license is "initial" after issuance before it is "full" and that before a license is "full" the license has not yet been "issued" so Appellant can do whatever it wants during this time period. Texas Human Resources Code Chapter 42 is the operative statute at play. The only mention in that statute of an "initial" license (*See*, 42.051 of the Texas Human Resources Code) is discussing exactly that – the FIRST license issued

21

to a facility (not "probationary" not "conditional" but merely "initial" meaning the first license). This is clear because the preceding section (42.050) discusses license "renewal" meaning renewing a license after the initial issuance. Texas law does not support or allow Appellants' fiction of some undefined period of time after issuance of a license where that license can be assailed and conditioned before a "full" license is issued. This concept of "initial" license was created by Appellants in TAC Chapter 745 without any authority. The operative statute (Texas Human Resources Code chapter 42) discusses "initial" license only in the sense that it is the **first** license issued to a facility; there is no authority or support for the concept that Appellants can divide licensing into "initial" and "full" and then create some nebulous time frame where Appellant can simply place any condition or take any action it wants in violation of Texas law. But, be all that as it may, Appellants have already admitted in writing as an Exhibit in Reporter's Record, Volume 3, Plaintiffs Exhibit 1 (P-001) that their support for retroactively conditioning Appellee's licenses as "heightened monitoring" was TAC 745.497 (*See* March 20, 2025 email from Laura Castillo to Taneshu Collier in P-001). TAC 745.497 is express and clear that any condition added to a license must be

22

added to the "initial" license at issuance. Appellees have cited this TAC provision and its express wording again and again and it is undeniable that TAC 745.497 says that the condition of heightened monitoring must be applied on the "initial" license and at issuance. Even Appellants' own handbook (section 3424.5) says that a condition of heightened monitoring must be added on the "initial" license prior to issuance. (*See,* Reporter's Record, Volume 3, P-005 which is 3424.5 of Appellant's own handbook which again states that the condition of heightened monitoring must be applied on the "initial" license before issuance). So, Appellant's entire argument (while false, unlawful, and misleading) is completely irrelevant because **their own TAC and handbook** are clear that a condition of heightened monitoring must be added on the "initial" license at or prior to issuance. Appellant's own argument impliedly admits again and again that Appellees had an "initial" license already but just not a "full" license. But, Appellant's very own TAC and handbook say that the condition of heightened monitoring must go on the "initial" license, so Appellants have really "shot themselves in the foot" here. To be clear, Appellee argues that Appellant's TAC creation of this "initial" license and "full" license concept is unlawful to begin with,

but it does not even matter because Appellant's cited authority for placing the condition on Appellee's license says that the condition must be placed on the "initial" license. There is no fact dispute that Appellants issued an "initial" license[11]. Appellants issued an "initial" license, and they did not include a condition of heightened monitoring so they cannot retroactively designate said condition thereafter. This entire argument based on a fiction created by Appellant of "initial" license versus "full" license is completely eviscerated by its own TAC and handbook both of which require heightened monitoring to be added to the "initial" license.

ii)  Regarding (ii) that Appellants rely on "linkage" to designate the condition fails for the very same reason as their justification for same is the exact same, TAC 745.497. So, this argument is "dead on arrival" because Appellant's legal support requires the designation on the "initial" license and that was not done. Furthermore, the cited handbook section (P-005) is directly applicable to "linkage" and says the exact same thing that the condition of heightened monitoring must be placed on the "initial" license before issuance. Even Appellants do

---

[11] Reporters Record, Volume 3, Pages 16-39, which are Exhibit P-007 through P-010, show the actual licensing documents and the summary of a timeline which was admitted to evidence without objection and all of which shows Appellants issued the initial licenses without any conditions at all

24

not try to argue that Appellees were never issued initial licenses. It is undisputed that Appellees were issued initial licenses with no conditions.

iii) Regarding (iii) that Appellee's harm or damage is conclusory, and Appellee's have already agreed that Appellants are not liable for "damages", these arguments are similarly unfounded. Both in the Reporter's Record (Volume 2, Pages 44-52) and in Appellee's own pleadings (CR 5-8) Appellees allege very specific facts about the additional and unlawful burden placed on the subject operations because of heightened monitoring even differentiating between what is typical of licensing (Appellants) without heightened monitoring and what is different from typical because of heightened monitoring. CR 5-8 is Appellee's verified pleading and the Reporter's Record citation (Volume 2, 44-52) is Taneshu Collier's own sworn testimony about the effect that heightened monitoring has on her facilities, her staff, and most importantly on the kids in her care (*See also*, Reporter's Record, Volume 2, pages 29-30, where Ms. Taneshu Collier describes the high risk kids she fosters and the trauma they have already endured in life). So, Appellees have provided very specific facts that are not at all conclusory. Furthermore, please note, again, that these

25

arguments from Appellant are really merit based and have no place in an analysis regarding jurisdiction; please also note that no discovery has taken place because Appellant's have evaded discovery thus far so to say Appellees' facts are conclusory is quite diabolical because first of all it is not true, secondly it is a merit based argument and is misplaced, but thirdly Appellants have evaded discovery and will not answer the propounded discovery sent by Appellees months ago. Appellants also have made the incredible argument that "damages" and "liability" are the same thing and that Appellees admit Appellants are not liable for "damages" so Appellants also have no liability in general. Of course, the Court will already understand that "damages" means money damages. Other than the attorney's fees Appellees hope to receive (because they have had to spend tens of thousands of dollars at this point) Appellees realize that Appellants will not have to pay money damages for the harm they have caused but in no way have Appellees said they are not entitled to relief. Appellees forward the very causes of action recounted herein and ask the Court to enjoin Appellants and to declare that Appellants are acting in an "ultra vires" fashion. Relief is not constrained to money damages; as the Court is aware there are many forms of relief and Appellees obviously seek

that relief that is available even if the Appellants cannot be forced to pay them money (other than the attorney's fees Appellees plead for) for the harm Appellant has caused. Finally, Appellants have indicated that because Appellees' activity is licensed by the State that Appellees have no rights, this is simply untrue. As the court is aware the right to life, liberty, and pursuit is guaranteed in Texas and must be kept free from unreasonable restraints. *See, for example*, Patel v. Texas Department of Licensing and Regulation, 469 SW3d 69 (Tex. 2014). Appellants' bare conclusion that because Appellees' business is regulated they have no rights is simply wrong.

Finally, also please note that Appellant's brief goes into great detail about the individual Defendant/Appellants Young and Castillo and goes so far as to state that "at the hearing on the Appellants' **plea to the jurisdiction**" Appellees did not put on "evidence" that Young or Castillo have taken any ultra vires actions; this is completely non-sensical for all the reasons previously stated – a plea to the jurisdiction is a pleading based proceeding that does not weigh evidence and is not concerned with the merits. That Appellants would base any aspect of its current appeal on a lack of evidence is astounding not only because a plea to the jurisdiction has nothing to do with merits and evidence but also because Appellants themselves are evading and obfuscating discovery. Please also consider that the

27

ultra vires actions Young and Castillo are taking are the very actions Appellees have ceaselessly and in great detail already described which is that each of them have placed a condition of heightened monitoring on Appellees operations without any lawful authority and furthermore the individual Defendants have enforced and driven and applied the intense procedures of heightened monitoring against Appellee for almost a year without any authority at all. Please also note that Reporters Record, Volume 2, pages 62-69 contain Ms. Castillo's own sworn testimony where she admits she is enforcing heightened monitoring against Appellees and she was responsible for placing the unlawful condition of heightened monitoring. As the Court is aware, claims brought under the Uniform Declaratory Judgment Act for declaratory or injunctive relief against actions taken by a governmental official beyond his discretion or without legal authority, known as ultra vires actions, do not implicate governmental immunity. *See* Hous. Belt & Terminal Ry. Co. v. City of Houston, 487 S.W.3d 154, 160 (Tex. 2016); *see also,* Collier v. Suhre, 605 S.W.3d 699, 703 (Tex. App. 2020). In other words, if an act is ultra vires, it is done outside of the powers and responsibilities of the State, and a challenge to the act is not a challenge to the State and its officers in the performance of their duty. *See* City of El Paso v. Heinrich, 284 S.W.3d 366, 370 and 372 (Tex. 2009). An official who commits an ultra vires act is not immune from suit because "[a] state official's illegal or unauthorized actions are not acts of

28

the State." *Id.* at 370 (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)); *see also*, Patel v. Texas Department of Licensing and Regulation, 469 SW3d 69 (Tex. 2014) ("In *Heinrich* we decided that sovereign immunity does not prohibit suits brought to require state officials to comply with statutory or constitutional provisions [when such a suit alleges] that a state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the officer's exercise of discretion"). So, to say that Appellees individual claims against Castillo and Young lack detail and are cursory is indefensible because Appellants won't respond to discovery or allow discovery to proceed, the motions and hearings thus far have been subsumed largely by Appellants jurisdictional plea which has nothing to do with the merits or evidence, and Appellees have described in great detail the unlawful actions of the State which are credibly ascribed to Young and Castillo in large part. In fact the only aspect of the trial court case not concerned with jurisdiction was Appellee's request for temporary injunction which was granted because there is substantial evidence of irreparable harm but none of that evidence was necessarily individually directed at Young or Castillo and did not need to be because Appellees simply needed the broad relief of injunction and did not need to develop its entire case to get this relief.

29

- *Argument Regarding Temporary Injunction*

Appellant spends all of about 3.5 pages of its 58-page brief discussing the temporary injunction and "bets the farm" on its jurisdictional arguments. Appellant did not object to any of Appellee's evidence in the trial court and made whatever arguments it tried to make in opposition of temporary injunction and lost. Abuse of discretion is a very high burden for Appellant to overcome and Appellant has not spent any material amount of time or made any material statements in support of appealing same. In opposition of Appellant's dearth of argument on this point, please consider, as this Court notes in Texas Education Agency v. Houston Independent School District, 609 SW3d 569 (Tex. App. – Austin) (2020) (hereinafter "*TEA*"): "By its very nature, a request for injunctive relief involves a party's assertion that if the opposing party's actions are not enjoined, it will suffer irreparable harm. In this particular case, **the trial court has concluded** that the District made a sufficient showing to establish a probable right to recovery on its ultra vires claims. **It further concluded** that the District made a sufficient showing that the alleged ultra vires conduct would cause irreparable harm because once the Commissioner performs a final administrative act, even if it is ultra vires, it would not be reviewable by an appellate court". *Id* at 577. Here Appellees have the exact same circumstances. The trial court did in fact make all those very same findings as described by the *TEA* court. So, without belaboring the issues already raised

30

Appellee would simply point out that the trial court examined the evidence in the Clerk's Record and the Reporter's Record and based on the evidence therein (documentary and testimonial) concluded that Appellees did in fact deserve relief and satisfied all factors. Furthermore, as this Court is aware, Appellees sought relief from this Court under Tex. R. App. Proc. 29.3 based on this same reasoning and law and this Court agreed in that particular motion with Appellee's reasoning and granted said relief. At page 30 of its brief Appellees make the conclusory statements that Appellants "have not met their burden", do not "have a probable right to recovery", do not have "imminent" harm or "irreparable injury". Appellee even goes so far as to say because Appellants are not complaining about heightened monitoring at a third, uninvolved location we could not possibly complain of heightened monitoring at the two subject locations; this is ridiculous as the third, uninvolved location was lawfully placed on heightened monitoring in accord with the procedures and standards in <u>Stukenberg v. Abbott</u>, 509 F.Supp. 3d 683 at 794 (US Dist. Ct. – Copus Christi) (2020), if anything this lends credibility to Appellee and does not detract from the force and accuracy of its legal arguments herein. Appellees do not complain about the uninvolved operation because it was lawfully conditioned. Also, it is of course a logical fallacy to conclude that if Appellees can deal with the intense scrutiny of heightened monitoring at one location surely it can handle it three locations thus tripling the current burden. The

31

only other argument made by Appellant is that the "status quo" is maintaining the unlawful and egregious condition of heightened monitoring which is ridiculous and as this Court already noted in is decision regarding Tex. R. App. Proc. 29.3, Appellants have produced no evidence at all that children are in any danger at Appellees' operations, in fact, to the contrary, all Appellants have found is that Appellees run good operations and take their duties to Texas children in need very seriously. To conclude, other than baseless and unsupported statements Appellants have not made any effective arguments against the trial court's ruling in favor of Appellants granting the temporary injunction.

## C.   CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees respectfully prays that this Court:

- Affirm the trial court's denial of Appellants' plea to the jurisdiction;

- Affirm the trial court's grant of Appellee's request for temporary injunction;

- Assess costs and attorney's fees against Appellant as supported by the trial courts express order from November 4, 2025; and

- Grant Appellee such other and further relief, general and special, legal and equitable, to which Appellee may be justly entitled.

Respectfully submitted,

*/s/ John Ferguson*
John Ferguson

32

Texas State Bar No. 24066597
john@fergusonlawpractice.com
Kyle Ann Ferguson
Texas State Bar No. 24065223
kyle@fergusonlawpractice. com
Ferguson Law Practice PLLC
1017 RR 620 S, Ste 222
Austin TX 78734
Tel: (512) 996-5407
Fax: (737) 208-1931
*Counsel for Appellee*

## Certificate of Compliance

Pursuant to Tex. R. App. P. 9.4(e), the document complies with the typeface requirements of Texas Rules of Appellate Procedure because it has been prepared in a conventional typeface no smaller than 14-point for text. The document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 8,543 words according to the word count feature of Microsoft Word, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ John Ferguson*
John Ferguson

## Certificate of Service

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eight Circuit through the appellate CM/ECF system on January 5, 2025. All participants in the case are registered CM/ECF users and will be served through the appellate CM/ECF system, including to the following:

Kelsey Hanson
Texas Bar No. 24096654
Assistant Attorney General
PO Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (737) 224-1244                    */s/ John Ferguson*
Fax: (512) 320-0667                    John Ferguson
Kelsey.hanson@oag.texas.gov

33

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

John Ferguson
Bar No. 24066597
john@fergusonlawpractice.com
Envelope ID: 109688996
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellees Response Brief
Status as of 1/6/2026 9:25 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Karen De Alejandro | | karen@fergusonlawpractice.com | 1/6/2026 9:19:39 AM | SENT |
| Chelsea Goodman | | chelsea.goodman@oag.texas.gov | 1/6/2026 9:19:39 AM | SENT |
| Kelsey Hanson | | kelsey.hanson@oag.texas.gov | 1/6/2026 9:19:39 AM | SENT |
| Kyle Ferguson | | kyle@fergusonlawpractice.com | 1/6/2026 9:19:39 AM | SENT |
| John Ferguson | | john@fergusonlawpractice.com | 1/6/2026 9:19:39 AM | SENT |
| Meghan Rudnai | | meghan@fergusonlawpractice.com | 1/6/2026 9:19:39 AM | SENT |